IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 13-cv-01379-MSK

MICHAEL GARRETT,

      Applicant,

v.

ROGER WERHOLTZ, Exec Director Colorado Dept of Corrections,
FRANCES FALK, Warden, Limon Correctional Facility, and
JOHN SUTHERS, Attorney General, State of Colorado,

      Respondents.

---

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (ECF No. 1) ("the Application").   Applicant Michael Garrett is a prisoner in the custody of the Colorado Department of Corrections.   Through counsel, Mr. Garrett challenges the validity of his conviction in Denver District Court case number 2002CR2638.   Respondents have filed an Answer to § 2254 Application (ECF No. 21) ("the Answer") and Mr. Garrett has filed a Reply Brief in Support of Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (ECF No. 28) ("the Traverse").   After reviewing the record, including the Application, the Answer, the Traverse, and the state court record, the Court FINDS and CONCLUDES that the Application should be denied and the case dismissed with prejudice.

# I.  BACKGROUND

Mr. Garrett shot and killed his ex-wife.   Mr. Garrett testified at trial that he acted in self-defense because his ex-wife pointed a gun at him and he believed she was going to shoot him.   A jury rejected his self-defense theory and convicted him of first degree murder and violation of a restraining order.   He was sentenced to life in prison without the possibility of parole.   The Colorado Court of Appeals affirmed the judgment of conviction. *See People v. Garrett*, No. 04CA0726 (Colo. App. Mar. 29, 2007) (unpublished) (ECF No. 1-3).   On September 10, 2007, the Colorado Supreme Court denied Mr. Garrett's petition for writ of certiorari on direct appeal.   (*See* ECF No. 1-5.)

In March 2008 Mr. Garrett filed in the trial court a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.   On November 6, 2008, the trial court denied the Rule 35(c) motion.   (*See* ECF No. 1-7.)   The trial court's order was affirmed on appeal.   *See People v. Garrett*, No. 08CA2456 (Colo. App. Feb. 10, 2011) (unpublished) (ECF No. 1-9).   On September 10, 2012, the Colorado Supreme Court denied Mr. Garrett's petition for writ of certiorari in the state court postconviction proceedings.   (*See* ECF No. 1-10.)

Mr. Garrett asserts eight claims for relief in the Application, a number of which include subparts.   The Court previously entered an Order to Dismiss in Part (ECF No. 17) dismissing claims 6(c), 6(d), and 6(e) as unexhausted and procedurally barred.   The remaining claims are timely and exhausted.

# II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state

court adjudication:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   Mr. Garrett bears the burden of proof under § 2254(d).   *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.   *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).   In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."   *Id.* at 784.   Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."   *Id.* at 784-85.   Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."   *Id.* at 784.   In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated."   *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).   Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably

3

applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Garrett seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court

4

> cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."   *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).   "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.   *Id.* at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.   *See Williams*, 529 U.S. at 409-10.   "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.   Rather that application must also be unreasonable."   *Id.* at 411.   "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.   Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.   The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.   [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (internal quotation marks omitted).   In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have

supported[] the state court's decision" and then "ask whether it is possible fairminded

jurists could disagree that those arguments or theories are inconsistent with the holding in

a prior decision of [the Supreme] Court." *Id.* In addition, "review under § 2254(d)(1) is

limited to the record that was before the state court that adjudicated the claim on the

merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal
> court, a state prisoner must show that the state court's ruling
> on the claim being presented in federal court was so lacking in
> justification that there was an error well understood and
> comprehended in existing law beyond any possibility for
> fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. §

2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section

2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court

decision was based on an unreasonable determination of the facts in light of the evidence

presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the

state court's factual determinations are correct and Mr. Garrett bears the burden of

rebutting the presumption by clear and convincing evidence. "The standard is

demanding but not insatiable . . . [because] '[d]eference does not by definition preclude

relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537

U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court make this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III.  MERITS OF APPLICANT'S REMAINING CLAIMS

**A.  Claim 1(a)**

Mr. Garrett alleges in claim 1(a) that admission of testimonial hearsay violated his

Sixth Amendment right to confront witnesses.   According to Mr. Garrett, the testimony

and statements that violated his rights with respect to claim 1(a) are the following:

- testimony by Officer Bueno that during an April 4, 2001 meeting with the victim, the victim said that Mr. Garrett telephoned and said "I'm going to get you.   I've got something for you, bitch."

- testimony by Officer Gimeno that on June 5, 2011, the victim told him she was trying to get a divorce from Mr. Garrett; she had a restraining order; she believed Mr. Garrett was violent; Mr. Garrett had choked her before; and Mr. Garrett threatened to choke her and said to her "I'm going to f— you up bitch, I'm going to choke you.

- testimony by Officer Salazar that on May 21, 2001, when the victim walked into the police station to make a report regarding violation of a restraining order, Mr. Garrett had called her and said "something to the effect of, you're looking for me, bitch, or you stupid bitch, and then said I've got something for you, bitch."   The victim also reported that she had tried to contact Mr. Garrett at her sister's house the day before because he had failed to pick up the kids for a custody visit.

- testimony by Denise Thach, an employee of an agency that works with battered women, regarding written statements made by the victim in the victim's sworn complaint used to obtain a restraining order that Mr. Garrett had broken into her home on March 3, 2001, and was waiting for the victim with a knife and that there had been past acts of violence.

- testimony by Janise Bean that Mr. Garrett came to watch his daughter's swimming lesson on July 21, 2001; that the victim said Mr. Garrett was not supposed to be there and that there was a restraining order.

- testimony by Officer Chinn that on August 1, 2001, the victim came into the police station and complained about the swimming pool incident on July 21, 2001.

- testimony by the victim's mother that in the Spring of 2001 the victim came to the mother's house and said Mr. Garrett jumped her when she got home

and the victim asked her dad to kill Mr. Garrett before he killed her.

- testimony by Kimberly Tatro, the victim's co-worker, that the victim had said she had a restraining order against Mr. Garrett; that Mr. Garrett was calling and leaving voice messages and threatening her; that Mr. Garrett had been found in the garage of their home during his daughter's birthday party; and that the victim had bought a gun after the birthday party incident.

- testimony by the victim's nephew that the victim had said Mr. Garrett choked her, that it was the last straw, and that Mr. Garrett had been watching her and could get her anytime.

Mr. Garrett also challenges admission of the victim's verified complaint used to obtain a restraining order.

The right of an accused to confront the witnesses against him is guaranteed by the Sixth Amendment to the United States Constitution and applies in both federal and state prosecutions.   *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006).   "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."   *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the United States Supreme Court held that the Confrontation Clause bars admission of testimonial statements of a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.   However, the Supreme Court in *Crawford* recognized that exceptions to this rule existed, including an exception based on the doctrine of forfeiture by wrongdoing, which "extinguishes confrontation claims on essentially equitable grounds."   *Id.* at 62 (citing *Reynolds v. United States*, 98 U.S. 145, 158-59 (1879)).   In *Reynolds*, the Supreme Court explained the doctrine of forfeiture by

9

wrongdoing as follows:

> The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away.   The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts.   It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege.   If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated.

*Reynolds*, 98 U.S. at 158.

Two years after *Crawford*, the Supreme Court again noted that the doctrine of forfeiture by wrongdoing provides an exception to the rule of confrontation:

> [W]hen defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they *do* have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system.   We reiterate what we said in *Crawford*: that "the rule of forfeiture by wrongdoing . . . extinguishes confrontation claims on essentially equitable grounds."   That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation."

*Davis v. Washington*, 547 U.S. 813, 833 (2006) (citation omitted).   The Supreme Court in

*Davis* expressly took "no position on the standards necessary to demonstrate such

forfeiture" of the constitutional right to confrontation by wrongdoing.   *Id.*

The Supreme Court again addressed the doctrine of forfeiture by wrongdoing in

*Giles v. California*, 554 U.S. 353, 355 (2008) ("We consider whether a defendant forfeits

his Sixth Amendment right to confront a witness against him when a judge determines

10

that a wrongful act by the defendant made the witness unavailable to testify at trial."). In

*Giles*, the Supreme Court held that the common-law doctrine of forfeiture by wrongdoing

applies only when the defendant's wrongful act was intended to prevent the witness from

testifying. *See id.* at 359-68.

After *Crawford* and *Davis*, but prior to *Giles*, the Colorado Court of Appeals

rejected Mr. Garrett's Confrontation Clause claim on direct appeal based on the doctrine

of forfeiture by wrongdoing. The Colorado Court of Appeals specifically reasoned as

follows:

> In *People v. Moore*, *supra*, 117 P.3d at 5, a division of
> this court held that a defendant forfeits his confrontation rights
> where it is undisputed that he killed the victim. We agree
> with the rationale and holding in *Moore* and conclude that it
> applies here. There is no question that Garrett killed the
> victim and thus precluded her from testifying. We therefore
> conclude that Garrett has forfeited his confrontation rights.
> *See also People v. Vasquez*, __ P.3d __ (Colo. App. No.
> 04CA0729, Nov. 30, 2006) (*cert. granted* Mar. 26, 2007).

(ECF No. 1-3 at 16-17.)

The Court first notes that not all of the identified statements were not excludable as

hearsay (out of court statements offered for the truth of the matter asserted). Second, it

is not clear that any, much less all, are testimonial statements subject to *Crawford*.

Indeed, the parties do not address either of these issues.

However, if one or more of the statements at issue were testimonial, the pertinent

question is whether the doctrine of forfeiture by wrongdoing in circumstances like this was

clearly established by the Supreme Court at the time Mr. Garrett's conviction became

final. *See Williams*, 529 U.S. at 390. As noted above, "clearly established law consists

of Supreme Court holdings in cases where the facts are at least closely-related or similar

to the case *sub judice*." *House*, 527 F.3d at 1016.   If there is no clearly established

federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).   *See id.* at

1018.

The state court's application of the doctrine of forfeiture by wrongdoing may be

erroneous under *Giles* because there is no evidence that Mr. Garrett intended to prevent

his ex-wife from testifying when he shot and killed her.   However, Mr. Garrett concedes,

as he must, that *Giles* was not clearly established federal law at the time his conviction

became final.   Therefore, the question becomes whether any clearly established federal

law precluded application of the doctrine of forfeiture by wrongdoing in a circumstance

like this at the time of Mr. Garrett's conviction.

Mr. Garrett does not identify any Supreme Court holding prior to *Giles* that

precludes application of the doctrine of forfeiture in this circumstance.   Instead, the

doctrine of forfeiture was broadly applied in decisions by lower courts.   *Compare United

States v. Houlihan*, 92 F.3d 1271, 1279-80 (1st Cir. 1996) (holding that a waiver of the

right to confrontation exists only if a defendant's wrongful act causing a witness's

unavailability is "undertaken with the intention of preventing the potential witness from

testifying at a future trial"), *with United States v. Garcia–Meza*, 403 F.3d 364, 370 (6th Cir.

2005) ("There is no requirement that a defendant who prevents a witness from testifying

against him forfeits his right to confront the witness only if he intended to prevent the

witness from testifying.").   Thus, the Court finds that prior to *Giles*, the federal doctrine of

forfeiture by wrongdoing did not require the defendant to intend to prevent the witness at

the time the defendant engaged in the wrongdoing that prevented the witness from doing

so.   *See Ruiz v. Scribner*, 341 F. App'x 278, 279 (9th Cir. 2009) (finding defendant not entitled to federal habeas corpus relief because no clearly established federal law required an "intent-to-silence" for the forfeiture by wrongdoing exception to apply prior to *Giles*).

The absence of clearly established federal law means that Mr. Garrett is not entitled to relief with respect to the Confrontation Clause claim.   *See House*, at 1018. Mr. Garrett attempts to avoid this result by arguing that the decision of the Colorado Court of Appeals was contrary to the Colorado Supreme Court's subsequent decision in *People v. Moreno*, 160 P.3d 242 (Colo. 2007).   (*See* ECF No. 28 at 16.)   The Court rejects this argument because the Colorado Supreme Court's decision in *Moreno* is not clearly established federal law as determined by the holdings of the United States Supreme Court.

For these reasons, Mr. Garrett is not entitled to relief with respect to claim 1(a).

**B.   Claims 1(b) and 2(a)**

Mr. Garrett maintains in claim 1(b) that admission of testimonial hearsay violated his due process right to a fair trial and he alleges in claim 2(a) that admission of evidence of prior bad acts also violated his right to due process and a fair trial.   The Court will consider these due process claims together because Mr. Garrett incorporates into claim 2(a) the evidence he contends violated his right to due process in claim 1(b).   The particular evidence relevant to claims 1(b) and 2(a) consists of the same testimony and statements challenged above in claim 1(a) as well as the following testimony by the victim's nephew:

- that Mr. Garrett and the victim argued in September 1997 and that Mr.

13

Garrett burned the victim's temple with a cigar and threatened to kill her if she left with the kids;

- that in November 1997 Mr. Garrett told the victim he would kill her if she moved away and then pointed a knife at the victim's nephew;

- that between November and December 1997 Mr. Garrett threw a hammer that hit the victim in the thigh during another argument and told the victim "you're going to die";

- that in 1998 he saw Mr. Garrett on top of the victim, choking her and yelling that he was going to kill her;

- that in June 2001 Mr. Garrett telephoned the victim's nephew and said he had been following the victim and could have "snuffed her out"; and

- that Mr. Garrett left messages on the victim's voice mail in which he called her a bitch, told her to answer the phone, and said he was going to get her or that he would kill her.

The Court notes initially that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.   In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."   *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).   Therefore, "[h]abeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results."   *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000).   A proceeding is fundamentally unfair so as to deprive the defendant of due process of law if it is "shocking to the universal sense of justice."   *United States v. Russell*, 411 U.S. 423, 432 (1973) (internal quotation marks omitted).   Stated another way, introduction of evidence fails the due process test of "fundamental fairness" if the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice."   *Dowling*

14

*v. United States*, 493 U.S. 342, 352 (1990) (internal quotation marks omitted).   As these tests demonstrate, the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."   *Id.*

"[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint."   *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted).   The Court's "[i]nquiry into fundamental unfairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner."   *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

The Colorado Court of Appeals determined that admission of Mr. Garrett's "threats and violent acts were relevant to show that he acted with specific intent and to rebut any suggestion that he acted in self-defense."   (ECF No. 1-3 at 5-6.)   In particular, the Colorado Court of Appeals reasoned that the relevance of this evidence depended on the legitimate inferences that "Garrett harbored animosity toward this specific victim" and that "[t]he victim had reason to fear Garrett (which would explain why she bought a handgun)."   (*Id.* at 6.)   The Colorado Court of Appeals also reasoned that the evidence in question was not unfairly prejudicial.   (*Id.* at 7-8.)   The Colorado Court of Appeals did find that some of the hearsay evidence improperly was admitted under state law, but concluded that the error was harmless because the evidence was cumulative.   (*See id.* at 11 ("The record is replete with admissible evidence of Garrett's threats and acts of domestic violence against the victim.").)

Mr. Garrett fails to demonstrate that the decision of the Colorado Court of Appeals is either contrary to or an unreasonable application of clearly established federal law.   In fact, most of his argument regarding these evidentiary issues focuses on alleged errors in admitting the evidence under state law.   However, as noted above, Mr. Garrett is not entitled to relief pursuant to § 2254 unless he can demonstrate a violation of his federal constitutional rights.   *See Estelle*, 502 U.S. at 67-68.

With respect to his constitutional arguments, Mr. Garrett does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.   *See House*, 527 F.3d at 1018.   He also fails to demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Richter*, 131 S. Ct. 786-87.   Based on the Court's review of the entire proceedings, the Court cannot conclude that admission of the evidence Mr. Garrett challenges in claims 1(b) and 2(a) rendered his trial fundamentally unfair.   Therefore, he is not entitled to relief with respect to claims 1(b) and 2(a).

## C.   Claims 2(b) and 4(b)

Claims 2(b) and 4(b) both relate to evidence of a prior violent act committed by the victim.   Mr. Garrett alleges in claim 2(b) that his right to present a defense was violated by exclusion of that evidence.   He specifically alleges the following in support of claim 2(b):

> [A defense witness], who knew [the victim by another name] in Arkansas, testified that, on January 10, 1993, [the victim] walked over to her car and shot it at least three times.

> The witness said there was no doubt in her mind that the
> [person] that shot at her was the same person as [the victim]
> in this case.   Over objection, the trial court instructed the jury
> that the incident was inadmissible unless there was proof that
> Mr. Garrett knew about it.   This was incorrect; it was
> admissible under CRE 404(a), and the court's ruling violated
> Mr. Garrett's constitutional right to present a defense as it [sic]
> evidence tended to show that he was not the first aggressor.

(ECF No. 1 at 47-48.)   Mr. Garrett contends in claim 4(b) that his right to due process and

a fair trial was violated by the trial court's instructing the jury not to consider any violent

acts by the victim unless Mr. Garrett was aware of them at the time of the charged killing.

It was clearly established when Mr. Garrett was convicted that, "[w]hether rooted

directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory

Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees

criminal defendants a meaningful opportunity to present a complete defense."   *Crane v.*

*Kentucky*, 476 U.S. 683, 690 (1986) (citations and internal quotation marks omitted).   Of

course,

> [w]hile the Constitution thus prohibits the exclusion of
> defense evidence under rules that serve no legitimate
> purpose or that are disproportionate to the ends that they are
> asserted to promote, well-established rules of evidence
> permit trial judges to exclude evidence if its probative value is
> outweighed by certain other factors such as unfair prejudice,
> confusion of the issues, or potential to mislead the jury.

*Holmes v. South Carolina*, 547 U.S. 319, 326 (2006); *see also Crane*, 476 U.S. at 689-90

(stating that "the Constitution leaves to the judges who must make these decisions 'wide

latitude' to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an

undue risk of 'harassment, prejudice, [or] confusion of the issues.'").

Ultimately, "to establish a violation of the right to compulsory process, a fair trial or

due process, a defendant must show a denial of fundamental fairness." *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997).   In determining whether Mr. Garrett can demonstrate a denial of fundamental fairness in the specific context of his claim that his constitutional right to present evidence was violated, the Court

> first examine[s] whether that testimony was relevant, and if so, whether the state's interests in excluding the evidence outweighed Mr. [Garrett's] interests in its admittance.   This inquiry includes an examination as to whether more traditional factors such as prejudice, issue and jury confusion weigh in favor of excluding the testimony.   Second, [the Court] examine[s] whether the excluded testimony was material – whether it was of such an exculpatory nature that its exclusion affected the trial's outcome.

*Id.*

The Colorado Court of Appeals reasoned as follows in rejecting Mr. Garrett's claim challenging the jury instructions regarding the evidence of the victim's prior violent act:

> Garrett contends that the trial court erroneously instructed the jurors that they could only consider evidence of the victim's prior violent acts if Garrett had been aware of those acts.   We reject this contention.

> Evidence of the victim's character for violence would have been relevant to the issue of self-defense because it would have tended to show that she was the initial aggressor. *See* CRE 404(a)(2); *People v. Jones*, 675 P.2d 9, 16 (Colo. 1984).   But Garrett offered no evidence of the victim's character:

> ● Under CRE 405(a), proof of character may be established only "by testimony as to reputation or by testimony in the form of an opinion."   Garrett offered no reputation or opinion testimony.

> ● Evidence of character may be established through specific instances of conduct under CRE 405(b) only when the person's character is an "essential element

of a charge, claim or defense."   A victim's character trait for violence is not an essential element of self-defense.   *People v. Jones*, *supra*, 675 P.2d at 17.

Thus, the victim's specific acts of violent conduct were relevant only if Garrett had been aware of those acts.   His knowledge of the victim's conduct would have been relevant to establish an essential element of self-defense, namely, the reasonableness of Garrett's belief in the imminent use of unlawful physical force against him.   *See People v. Jones*, *supra*.

(ECF 1-3 at 23-24.)

Mr. Garrett fails to demonstrate that the decision of the Colorado Court of Appeals is either contrary to or an unreasonable application of clearly established federal law.   He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.   He also fails to demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Richter*, 131 S. Ct. 786-87.   Based on the Court's review of the entire proceedings, the Court cannot conclude that the trial court's instructions regarding the evidence of the victim's prior violent acts rendered his trial fundamentally unfair because Mr. Garrett does not argue that he was aware of the victim's prior violent act in question.   As a result, the evidence was not relevant to his effort to demonstrate he acted in self-defense.   Therefore, he is not entitled to relief with respect to claims 2(b) and 4(b).

**D.   Claim 3**

Mr. Garrett contends in claim 3 that his right to due process and a fair trial was

violated by admission of highly speculative statistical evidence about the history of

violence in other domestic violence cases.   He describes the factual basis for this claim

as follows:

> The prosecutor asked Denise Thach, an employee of
> an agency that works with battered women, about
> percentages of domestic violence complainants and their
> behavior, and what they report.   Defense counsel objected
> repeatedly on grounds of speculation, hearsay,
> non-relevance, CRE 403 grounds, and acceptance of opinion
> testimony from a non-expert.   Ms. Thach testified that only
> about 10% of women that come in for restraining orders are
> doing so as a result of a first incident of abuse.   She said that
> she assists between 75 and 100 women per week and it is
> "not very often" that women come in the first time that they are
> abused.   She said it was more common that the women
> apply for a restraining order after a lengthy period of abuse.

(ECF No. 1 at 51-52.)   According to Mr. Garrett, admission of this evidence denied him a

fair trial because "Ms. Thach essentially testified, based on her improper manipulation of

statistics[,] that there was a 90% chance that, in this case, there was prior abuse and that

[the victim] must have been telling the truth."   (ECF No. 28 at 22.)

On direct appeal, the Colorado Court of Appeals "conclude[d] that the trial court

properly determined that defense counsel opened the door during cross-examination to

general testimony about reporting behavior, whether people file false reports, and

whether the victim in this case had reported previous acts of domestic violence."   (ECF

No. 1-3 at 21.)   However, the Colorado Court of Appeals also determined that "the

witness's testimony about the percentage of victims that report domestic abuse after the

first incident was improperly admitted" under state law.   (*Id.*)   Ultimately, the Colorado

Court of Appeals

> conclude[d] that admission of the testimony was harmless because it could not have substantially influenced the verdict or impaired the fairness of trial.   The testimony was brief and unimportant, especially because the witness testified that she had no recollection of the victim and generally does not know whether victims' reports are truthful.

(*Id.* at 22.)

Both parties contend that the Court should apply the harmless error standard in *Brecht* to review the ruling of the Colorado Court of Appeal regarding claim 3.   As noted above, the harmless error standard in *Brecht* must be applied to "assess the prejudicial impact of constitutional error in a state-court criminal trial."   *Fry*, 551 U.S. at 121.   However, the harmless error standard in *Brecht* is not applicable unless there was an error of constitutional magnitude under the standards in § 2254(d).   *See Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002) (finding that "in cases governed by [the Antiterrorism and Effective Death Penalty Act], the habeas court is to apply the harmless error standard set out in *Brecht* when a state court decides a constitutional issue contrary to controlling Supreme Court authority or unreasonably applies that authority").

Here, the Colorado Court of Appeals did not determine that admission of Ms. Thach' testimony about the percentage of victims that report domestic abuse after the first instance was constitutional error.   Instead, the state court determined that it was admitted erroneously as a matter of state law.   (*See* ECF No. 1-3 at 21.)   Therefore, the first question the Court must consider in addressing claim 3 is whether the state court's decision was contrary to or an unreasonable application of clearly established federal law.   As noted above in the context of claims 1(b) and 2(a), "[h]abeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so

21

fundamentally unfair that a denial of constitutional rights results." *Mayes*, 210 F.3d at 1293.

Mr. Garrett fails to demonstrate that the decision of the Colorado Court of Appeals is either contrary to or an unreasonable application of clearly established federal law.   He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.   He also fails to demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. 786-87.   Based on the Court's review of the entire proceedings, the Court cannot conclude that admission of Ms. Thach's testimony about the percentage of victims that report domestic abuse after the first instance rendered his trial fundamentally unfair.   As the Colorado Court of Appeals correctly noted, the testimony in question was brief and it also was unimportant because Ms Thach testified that she had no recollection of the victim and generally does not know whether a victim's report is truthful.   (*See* State Court R., Trial Tr. 2/23/04 at pp.105-07, 114.)

For the same reasons, even assuming the existence of a constitutional error the Court is not persuaded that admission of Ms. Thach' testimony about the percentage of victims that report domestic abuse after the first instance had a substantial and injurious effect on the jury's verdict.   *See Brecht*, 507 U.S. at 637.   "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435

(1995)).   "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error."   *O'Neal*, 513 U.S. at 435.   The Court does not harbor grave doubt about the effect on the jury's verdict of Ms. Thach's testimony.

For these reasons, Mr. Garrett is not entitled to relief with respect to claim 3.

## E.   Claim 4(a)

Mr. Garrett contends in claim 4(a) that his right to due process and a fair trial was violated by the trial court's failure to properly instruct the jury on the affirmative defense of self-defense as a matter of state law.   He also contends that "[t]he right to affirmative defense instructions is part of the constitutional right to present a defense."   (ECF No. 28 at 28.)   Mr. Garrett specifically argues in support of claim 4(a) that the jury was not properly instructed regarding the principles of reasonableness and apparent necessity based on a mistake of fact and that the jury should have been instructed that "[d]etached reflection is not required in the presence of a gun being uplifted."   (*Id.* at 25.)   Mr. Garrett maintains that the "mistake of fact" component was important because he "did not know that [the victim's] gun had the safety activated."   (*Id.*)

The Court first will address Mr. Garrett's contention that his constitutional right to present a defense was violated.   As noted above, clearly established federal law provides that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."   *Crane*, 476 U.S. at 690 (internal quotation marks omitted).   However, while the Supreme Court has invoked this principle in cases dealing "with the exclusion of evidence" and "the testimony of defense witnesses," it has never

done so in a case involving "restrictions imposed on a defendant's ability to present an affirmative defense." *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993).   In *Gilmore*, the Supreme Court rejected arguments "that the right to present a defense includes the right to have the jury consider it, and that confusing instructions on state law which prevent a jury from considering an affirmative defense therefore violate due process." *Id.*   The Court concluded that such an "expansive reading" of Supreme Court precedent "would make a nullity of the rule . . .   that instructional errors of state law generally may not form the basis for federal habeas relief." *Id.* at 344 (citing *Estelle v. McGuire*, 502 U.S. 62 (1991)); *see also Kaiser v. Nelson*, No. 00–3016, 2000 WL 1125608, at *6 (10th Cir. Aug. 9, 2000) (relying on *Gilmore* to find that a habeas petitioner's constitutional right to present a defense did not include the right to an instruction on the defense of withdrawal). Therefore, to the extent Mr. Garrett's claim 4(a) is premised on a violation of his constitutional right to present a defense, he is not entitled to relief because there is no clearly established federal law.   *See House*, at 1018.

The Court next will address the due process component of claim 4(a).   A jury instruction violates due process if it fails to give effect to the requirement that the State prove every element of the offense.   *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam).   However, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.   The question is whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process." *Id.* (internal quotation marks omitted).   Thus, the particular instruction being challenged "may not be judged in artificial isolation, but must be viewed in the context of

the overall charge." *Id.* (internal quotation marks omitted).

Relying on state law, the Colorado Court of Appeals rejected Mr. Garrett's claim that the trial court improperly instructed the jury on self-defense because "[t]he self-defense instruction adequately apprised the jury of the principles of apparent necessity and reasonableness" and Mr. Garrett "was not entitled to have the jury instructed that . . . '[d]etached reflection cannot be demanded in the presence of an uplifted knife or gun.'"   (ECF No. 1-3 at 23.)

Mr. Garrett fails to demonstrate that the decision of the Colorado Court of Appeals is either contrary to or an unreasonable application of clearly established federal law.   He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.   He also fails to demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. 786-87.   Based on the Court's review of the jury instructions as a whole and the entire proceedings, the Court cannot conclude that the trial court's instruction on the affirmative defense of self-defense "so infected the entire trial that the resulting conviction violates due process." *Middleton*, 541 U.S. at 437 (internal quotation marks omitted). Therefore, Mr. Garrett is not entitled to relief with respect to claim 4(a).

**F.  Claim 5**

Mr. Garrett contends in claim 5 that his right to due process and a fair trial was violated by the trial court giving the prosecution's "make my day law" instruction without

modifications requested by the defense. Colorado's "make my day" statute provides

that

> any occupant of a dwelling is justified in using any degree of physical force, including deadly physical force, against another person when that other person has made an unlawful entry into the dwelling, and when the occupant has a reasonable belief that such other person has committed a crime in the dwelling in addition to the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry, and when the occupant reasonably believes that such other person might use any physical force, no matter how slight, against any occupant.

Colo. Rev. Stat. § 18-1-704.5(2). Mr. Garrett argues as follows in support of claim 5:

> [t]he trial court gave a "make my day law" instruction that permitted the jury to rely upon the violation of the restraining order as both the unlawful entry as well as the intended "unlawful act." (Instruction 22). Defense counsel requested that the jury be instructed that violation of the restraining order alone was insufficient to satisfy the People's burden of proof that the "make my day" statute applies. The court rejected this request, but did allow Mr. Garrett to address this issue in his theory of the defense instruction.

> The "make my day" statute requires not only that there be an illegal entry, but also that the resident "has a reasonable belief that such other person has committed a crime in the dwelling *in addition to* the uninvited entry, or is committing or intends to commit a crime against a person or property in addition to the uninvited entry." C.R.S. § 18-1-704.5(2) (emphasis added). Where, as here, there is a restraining order in place, based on the instruction given, the jury could conclude that the mere act of entering the residence satisfies both the unlawful entry requirement (an uninvited entry into a residence constitutes a trespass) and the requirement that the person entering[] has, or intends to commit a crime (violation of a restraining order). . . . It is the People's burden to prove not only that Mr. Garrett violated the restraining order, but to prove also that he intended to commit a crime *in addition to* the violation of the restraining order.

26

> The instructions given by the Court were substantially misleading and confusing, because entry into an open garage in violation of a restraining order cannot automatically satisfy both the "unlawful entry" element of the statute and the requirement that the individual entering intends to commit an additional crime.   The instruction given could lead the jury to conclude that Mr. Garrett was not entitled to claim self-defense because he was in violation of a restraining order at the time of the shooting.

(ECF No. 28 at 26-27.)

Respondents correctly note that the Colorado Court of Appeals did not address explicitly the precise due process claim regarding the "make my day law" instruction that Mr. Garrett is asserting in this action.   Nevertheless, it appears that the same claim was raised by Mr. Garrett on direct appeal.   (*See* ECF No. 1-1 at 46-47.)   Therefore, the Court presumes the claim was adjudicated on the merits and Mr. Garrett still must demonstrate "there was no reasonable basis for the state court to deny relief."   *Richter*, 131 S. Ct. at 784-85.

As discussed above in connection with claim 4(a), a jury instruction violates due process if it fails to give effect to the requirement that the State prove every element of the offense and the particular instruction being challenged "may not be judged in artificial isolation, but must be viewed in the context of the overall charge."   *See Middleton*, 541 U.S. at 437 (internal quotation marks omitted).   The pertinent question is whether the challenged instruction "so infected the entire trial that the resulting conviction violates due process."   *Id.* (internal quotation marks omitted).

Mr. Garrett fails to demonstrate that the decision of the Colorado Court of Appeals is either contrary to or an unreasonable application of clearly established federal law.   He does not cite any contradictory governing law set forth in Supreme Court cases or any

27

materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.   He also fails to demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. 786-87.   Based on the Court's review of the jury instructions as a whole and the entire proceedings, the Court cannot conclude that the giving the prosecution's "make my day law" instruction without the modifications requested by the defense "so infected the entire trial that the resulting conviction violates due process." *Middleton*, 541 U.S. at 437 (internal quotation marks omitted).   Therefore, Mr. Garrett is not entitled to relief with respect to claim 5.

## G.   Claims 6(a) and 6(b)

Claims 6(a) and 6(b) raise issues of prosecutorial misconduct.   Claims 6(a) is premised on a misstatement of the evidence during closing argument when the prosecutor stated that Mr. Garrett testified he knew the safety on the victim's gun was on when he confronted her.   More specifically, the prosecutor stated the following during closing argument:

> The other interesting thing that Michael Garrett said when he testified was that he knew the safety was on.   That's what he said from this stand.   He knew that the safety was on.

(State Court R., Trial Tr. 2/25/04 at p.142.)   After defense counsel objected and the trial court instructed the members of the jury to rely on their own recollections of the evidence and that statements of counsel are not evidence, the prosecutor continued, "You remember it, because what he said on cross was that he knew the safety was on.   He

28

just started shooting." (*Id.*)   According to Mr. Garrett, his actual testimony was that he

did not know the safety mechanism on the gun was activated.   The Court's review of the

state court record confirms that the prosecution's reference to Mr. Garrett's testimony

regarding the safety mechanism on the gun was incorrect.   Instead, when asked during

cross-examination to confirm that the victim had not fired a shot at him, Mr. Garrett stated

that "I wasn't – I'm under the impression that a gun is unsafe.   I didn't know."   (State

Court R., Trial Tr. 2/24/04 at p.242.)   According to the Colorado Court of Appeals, the

prosecutor apparently "mistook the term 'unsafe' for 'on safe.'"   (ECF No. 1-3 at 27).

Respondents do not dispute that the prosecution's reference during closing argument to

Mr. Garrett's testimony about the safety mechanism on the victim's gun was incorrect.

(*See* ECF No. 21 at 59.)

 The clearly established federal law for purposes of a claim of prosecutorial

misconduct is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168

(1986).   *See Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam).   In *Darden*,

the Supreme Court explained that prosecutorial misconduct violates the Constitution only

when the misconduct "'so infected the trial with unfairness as to make the resulting

conviction a denial of due process.'"   *Darden*, 477 U.S. at 181 (quoting *Donnelly v.

DeChristoforo*, 416 U.S. 637, 643 (1974)).   In order to determine whether prosecutorial

misconduct rendered the trial fundamentally unfair, the Court must consider "the totality of

the circumstances, evaluating the prosecutor's conduct in the context of the whole trial."

*Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998).   "[T]he *Darden* standard is a

very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case

determinations.'"   *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   Finally, prosecutorial misconduct claims are mixed questions of law and fact.   *See Duckett v. Mullin*, 306 F.3d 982, 988 (10th Cir. 2002).

The Colorado Court of Appeals rejected this claim of prosecutorial misconduct because "[t]he prosecutor explained that she had a good faith basis for her statement, and it appears that she simply mistook the term 'unsafe' for 'on safe.'   In any event, the court correctly instructed the jury to rely on its own recollection of testimony, and we presume the jurors followed that instruction."   (ECF No. 1-3 at 27).

Mr. Garrett fails to present any evidence, let alone clear and convincing evidence, to overcome the presumption of correctness that attaches to the state court's factual determination that the prosecutor had a good-faith basis for her mistaken statement regarding the safety mechanism.   *See* 28 U.S.C. § 2254(e)(1).   Furthermore, the state court record indicates there were problems with the sound system in the courtroom during the trial, and during Mr. Garrett's testimony in particular, that supports the conclusion that the prosecutor's misstatement was not intentional.   (*See*, *e.g.*, State Court R., Trial Tr. 2/25/04 at pp.155-58.)

Mr. Garrett also fails to demonstrate that the decision of the Colorado Court of Appeals is either contrary to or an unreasonable application of clearly established federal law.   He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.   *See House*, 527 F.3d at 1018.   He also fails to demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."

*Richter*, 131 S. Ct. 786-87.   As noted above, "the *Darden* standard is a very general one,

leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'"

*Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

In light of this very general standard, the absence of any evidence or indication the

prosecutor intentionally misstated the evidence and, most importantly, the trial court's

immediate instruction that the jury must rely on its own recollection of the evidence

because statements of counsel are not evidence, the Court cannot conclude that Mr.

Garrett's trial was fundamentally unfair.   *See Greer v. Miller*, 483 U.S. 756, 766 (1987)

("The sequence of events in this case-a single question, an immediate objection, and two

curative instructions-clearly indicates that the prosecutor's improper question did not

violate Miller's due process rights." (footnote omitted)).   Therefore, Mr. Garrett is not

entitled to relief with respect to claim 6(a).

    Claim 6(b) is a claim of prosecutorial misconduct premised on other comments

made by the prosecution during closing argument and throughout the trial to which Mr.

Garrett did not object.   These comments consist of the following:

- personal vouching for the victim and her sobriety on the night she was killed ("I guarantee that [the victim] would have sobered up very quickly the minute she saw that man coming up her driveway at 2:30 in the morning;" "we do not believe that [the victim] ever –;" "The People certainly do submit that there is no evidence of self-defense or that [the victim] ever had a gun.");

- vouching for the truth of Mr. Hollins' testimony;

- incorrectly denying that Mr. Garrett testified about the victim pointing a gun at him ("Just because counsel notes it in their opening that he's looking down the barrel of a gun, there is no evidence of that at all, because that did

not happen.");

- injecting issues broader than guilt or innocence to inflame the passions of the jury ("And, granted, she took abuse for too long.   She took too much for too long, but she thought she could handle it."); and

- improper cross-examination of Mr. Garrett by telling him the victim's father could probably "whoop him" in a physical fight while yelling and pointing at the victim's father in the courtroom.

The Colorado Court of Appeals rejected this claim of prosecutorial misconduct because "the complained-of statements do not constitute plain error, either because they were proper or because they did not undermine the fundamental fairness of the trial."   (ECF No. 1-3 at 28).

Once again, Mr. Garrett fails to demonstrate that the decision of the Colorado Court of Appeals is either contrary to or an unreasonable application of clearly established federal law.   He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.   *See House*, 527 F.3d at 1018.   He also fails to demonstrate that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Richter*, 131 S. Ct. 786-87.   Therefore, Mr. Garrett also is not entitled to relief with respect to claim 6(b).

## H.   Claim 7

Mr. Garrett contends in claim 7 that his right to a fair and impartial jury was violated by the trial court's refusal to strike juror Rice for cause.   During voir dire, the defense challenged juror Rice for cause based on his responses to questions regarding his ability

to be impartial and follow the law.   (*See* State Court R., Trial Tr. 2/18/04 at pp.172-77, 180-82, 221-24, 235-37.)   Ultimately, the defense used a peremptory challenge to strike juror Rice.   (*Id.* at 271.)   As a result, juror Rice was not on the panel that determined Mr. Garrett's guilt.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant the right to an impartial jury.   *See Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).   If a "juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," he should be dismissed for cause.   *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (internal quotation marks omitted); *see also United States v. Scull*, 321 F.3d 1270, 1278 (10th Cir. 2003).   However, in deciding whether the jury was impartial, the Court must focus on the jurors who ultimately deliberated and decided Mr. Garrett's fate.   *See Ross*, 487 U.S. at 86.

The Court finds that claim 7 lacks merit because, as noted above, the record is clear that the defense used a peremptory challenge to excuse juror Rice after the trial court denied the defense challenge for cause.   Thus, Mr. Garrett cured any constitutional error that may have occurred when the trial court refused to remove juror Rice for cause. *See Ross*, 487 U.S. at 88.   The fact that Mr. Garrett was required to use a peremptory challenge to achieve the goal of an impartial jury is not sufficient to demonstrate a constitutional violation.   *See id.*; *see also Rivera v. Illinois*, 556 U.S. 148, 157 (2009) ("there is no free-standing constitutional right to peremptory challenges").   Therefore, the Court finds that Mr. Garrett is not entitled to relief with respect to claim 7.

## I.  Claim 8

Mr. Garrett contends in claim 8 that his right to due process and a jury of his peers was violated by the trial court's denial of his *Batson* challenge to the prosecution's use of peremptory challenges of non-white jurors.   Mr. Garrett alleges in support of claim 8 that he is African-American and that the jury pool ended up with no African-Americans or any other minority representation because the prosecution used peremptory challenges to dismiss two African-American jurors (N.W. and C.W.) and two Hispanic jurors (C-M and F).

In *Batson v. Kentucky*, 476 U.S. 79, 86 (1986), the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the prosecution from intentionally using peremptory challenges to exclude potential jurors on the basis of their race.   The Supreme Court has described the process of evaluating a *Batson* claim in federal habeas corpus proceedings as follows:

> A defendant's *Batson* challenge to a peremptory strike requires a three-step inquiry.   First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.   476 U.S., at 96-97, 106 S. Ct. 1712.   Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question.   *Id.*, at 97-98, 106 S. Ct. 1712. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam).   Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.   *Batson*, supra, at 98, 106 S. Ct. 1712.   This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the

> opponent of the strike."  *Purkett*, supra, at 768, 115 S.Ct. 1769.
>
> On direct appeal in federal court, the credibility findings a trial court makes in a *Batson* inquiry are reviewed for clear error.  *Hernandez v. New York*, 500 U.S. 352, 364-366, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion) (holding that evaluation of a prosecutor's credibility "lies 'peculiarly within a trial judge's province'").  Under AEDPA, however, a federal habeas court must find the state-court conclusion "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Thus, a federal habeas court can only grant [the] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge.  State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by "clear and convincing evidence."  § 2254(e)(1).  *See Miller-El v. Dretke*, 545 U.S. 231, 240, 125 S. Ct., at 2325 (2005).

*Rice v. Collins*, 546 U.S. 333, 338-39 (2006).

At trial, Mr. Garrett specifically raised a *Batson* challenge only with respect to the dismissal of N.W.  (*See* State Court R., Trial Tr. 2/18/04 at pp. 263.)  Mr. Garrett also noted in support of his *Batson* challenge regarding N.W. that the prosecution had used peremptory challenges to excuse another African-American juror, C.W., and two Hispanic jurors, one of who was C-M.  (*See id.*)  The prosecutor provided the following explanation for these peremptory challenges:

> With respect to [N.W.], frankly, as the Court could tell, that took some discussion with counsel.  Because I like [N.W.], but the reality is that he witnessed the police shoot his niece and kill her.
>
> It has not been resolved.  He was very clear that he has issues with the police.  Given all of those factors, I have concerns about him.  I also note that he glared at me for most of the jury selection, and I have concerns about that as well.

> With respect to [C.W.], he was not only difficult to understand, but I think he's a defendant in Courtroom 17 that I have seen on numerous occasions.   He has pending cases in Denver.   He has prior felony convictions.   And neither of those people have anything to do with their race.
>
> With respect to [C-M], she is married to a man who's convicted of sexual assault on a child, and has indicated that she has gone through this process, and I have had concerns about her as well.

(*Id.* at pp. 263-64.)   In reply, defense counsel stated that he did not see N.W. glare at anyone and that N.W. had stated he could be a very fair and impartial juror.   (*See id.* at 264-65.)

The trial court determined that the defense had established a prima facie case under *Batson's* first step but ultimately rejected the *Batson* challenge because the prosecution provided a race-neutral explanation that was not pretextual.   (*See id.* at 265.)   The trial court also noted that both sides had excused African-American jurors, although the African-American juror excused by the defense was excused for cause and not as the result of a peremptory challenge.   The trial court provided the following explanation for noting that both sides had excused African-American jurors:   "[t]he only thing I was trying to demonstrate is that both sides have excused African-Americans, . . . and the purpose for making that finding is if . . . we are on short supply, . . . I can't hold one side responsible for the short supply when both sides are excusing them."   (*Id.* at 266.)

On direct appeal, the Colorado Court of Appeals found that the trial court properly denied the *Batson* challenge to N.W. because "[t]he prosecution articulated a race-neutral reason for its peremptory challenge, and the record supports the trial court's

determination that the prosecutor's reason was not pretextual."   (ECF No. 1-3 at 27.)

The Colorado Court of Appeals did not address the *Batson* challenge with respect to

C.W., C-M, or F.

Mr. Garrett argues that the explanation offered by the prosecutor for excusing

N.W. and C.W. was pretextual and that "[t]he trial court erred as a matter of law in ruling

that a *Batson* challenge is neutralized by the defense use of challenges."   (ECF No. 28 at

45.)   With respect to C-M and F, Mr. Garrett contends that "the trial court did not even

require the prosecutor to give an explanation for striking the two Hispanic jurors, even

though this left an all-white jury."   (ECF No. 28 at 45.)

Mr. Garrett fails to demonstrate that the state court's rejection of his *Batson* claim

was "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   In short, it was not

unreasonable for the state courts to credit the prosecution's race-neutral explanations for

the *Batson* challenge.   *See Rice*, 546 U.S. at 339.

The Court initially rejects Mr. Garrett's assertion that his constitutional rights were

violated simply because N.W., C.W., C-M, and F. were excused by peremptory

challenges despite stating or indicating they could be fair.   "While challenges for cause

permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of

partiality, the peremptory permits rejection for a real or imagined partiality that is less

easily designated or demonstrable."   *Swain v. Alabama*, 380 U.S. 202, 220 (1965)

(*overruled on other grounds by Batson*).

The Court also rejects Mr. Garrett's argument that the explanation offered by the

prosecution for excusing N.W. was pretextual.   The prosecution expressed concerns

that N.W. had issues with the police because N.W. had witnessed the police shoot and kill

his niece and that N.W. had glared at the prosecution during jury selection.   Mr. Garrett

fails to demonstrate these reasons are not race-neutral.   *See United States v. Moore*,

651 F.3d 30, 43 (D.C. Cir. 2011) (juror's views on law enforcement, including a concern

about "rogue police officers" and a "bad experience" with law enforcement that "[l]eft a

bad taste," provided a race-neutral explanation); *United States v. Brown*, 560 F.3d 754,

763 (8th Cir. 2009) (no clear error in trial court's ruling that juror who "reported that her son

had been 'brutalized' by law enforcement" was excused by prosecution for race-neutral

reason); *United States v. Brooks*, 2 F.3d 838, 841 (8th Cir. 1993) (finding prosecution's

explanation that juror was stricken because of his experience as a victim of police brutality

was based on race-neutral reason); *Maixner v. Rudek*, 492 F. App'x 920, 922 (10th Cir.

2012) (stating it was "apparent from the record" that prospective juror who described an

unsatisfactory experience with a district attorney and an untruthful police officer and who

had a cousin who had been convicted of murder was excused for race-neutral reasons).

Mr. Garrett also fails to demonstrate a *Batson* violation with respect to C.W., C-M

or F.   Mr. Garrett's vague and conclusory assertion that the prosecution's explanation for

striking these jurors was pretextual is not sufficient to demonstrate the state courts

unreasonably credited the prosecution's race-neutral explanations.   *See Rice*, 546 U.S.

at 339.   The prosecution explained that C.W. was difficult to understand and had pending

cases and prior felony convictions and Mr. Garrett fails to demonstrate that this

explanation is not race-neutral.   Furthermore, contrary to Mr. Garrett's assertion that "the

trial court did not even require the prosecutor to give an explanation for striking the two Hispanic jurors" (ECF No. 28 at 45), the prosecutor explained that he was concerned about C-M because she was married to a man who was convicted of sexual assault on a child and indicated that she has gone through this process.   Mr. Garrett makes no argument that this explanation is not race-neutral.

Although Mr. Garrett is correct regarding the absence of any explanation regarding F., that is only because his *Batson* challenge did not encompass any juror who might be identified as F.   It appears from the Application that juror F. was a potential juror surnamed Fresquez because the citation to the trial transcript corresponds with questions posed to juror Fresquez.   (*See* ECF No. 1 at 84.)   However, the two Hispanic jurors specifically mentioned by Mr. Garrett during voir dire in support of his *Batson* challenge were C-M and a juror with the surname Ybarra.   (*See* State Court R., Trial Tr. 2/18/04 at p.263.)   Therefore, because Mr. Garrett's *Batson* challenge did not encompass juror F., who was not excused until after the *Batson* challenge was made and denied (*see id.* at p. 271), Mr. Garrett fails to demonstrate that exclusion of juror F. violated his rights in any way.

Finally, Mr. Garrett's argument that "[t]he trial court erred as a matter of law in ruling that a *Batson* challenge is neutralized by the defense use of challenges" (ECF No. 28 at 45) mischaracterizes the trial court's statements regarding the shortage of African-American jurors.   The trial court did not rule that a *Batson* challenge is neutralized by the defense use of challenges.   Instead, as discussed above, the trial court mentioned the fact that the defense had excused an African-American juror only to demonstrate that both sides had contributed to the shortage of African-American jurors.

The trial court's comments do not demonstrate an unreasonable determination of the facts regarding the prosecution's peremptory challenges in light of the evidence presented.

For all of these reasons, Mr. Garrett is not entitled to relief on his *Batson* claim.

## IV.  CONCLUSION

In summary, the Court finds that Mr. Garrett is not entitled to relief on any of his remaining claims.   Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (ECF No. 1) is denied and this case is dismissed with prejudice.   It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED this 28th day of April, 2014.

**BY THE COURT:**

Marcia S. Krieger
United States District Court